## ADAM BOYD *versus* MICHAEL BROWN.

The plaintiff sold three fourths of a vessel to A, and the remaining fourth to L, but subsequently the vessel was reconveyed to him by the vendees. In an action by the plaintiff, against an officer who had attached the vessel at the suit of a creditor of A, it was *held*, that evidence tending to show fraud in the reconveyance by L, was inadmissible for the purpose of showing that the reconveyance by A was fraudulent.

A, the owner of a vessel, being in embarrassed circumstances, gave a bill of sale of her to C, without any consideration, in order to prevent her from being attached by his creditors; and C, with the consent of A, conveyed the vessel to B, one of such creditors. It was *held*, that the title of B was valid as against the other creditors of A, it being too late for them, after the conveyance to B, to avoid the bill of sale from A to C.

In the same case, it appeared that after the conveyance to B, the officer who had previously attached the vessel at the suit of other creditors of A, discharged the keeper and delivered the vessel, which was then lying at the wharf of A, to B. It was *held*, that this was a sufficient delivery, if made with the consent and in behalf of A.

In the same case, it appeared that B, in consideration of the conveyance of the vessel to him, agreed to indorse a certain sum on a note then held by him against A, and that the vessel was subsequently attached by creditors of A. It was *held*, that if the indorsement was not made until after the attachment, and was antedated, such delay and antedating were not conclusive evidence of fraud in the conveyance, but were only circumstances for the jury to consider, in determining the question whether the conveyance was fraudulent or not.

In the same case, it appeared that when the vessel was conveyed to B, B told A that he would leave the vessel with him, and that if A would pay the debt due to B, he would give him a bill of sale of her. It was *held*, that as the question, whether this constituted a mortgage, or an absolute sale with a conditional promise to reconvey, depended on the intention of the parties, which was to be ascertained by parol evidence, it was for the jury to determine it ; and that the circumstance, that it could not be recorded as a mortgage, had a strong tendency to show, that it was not intended as such by the parties.

In an action against an officer for attaching a vessel bound on a voyage, the court instructed the jury to estimate the damages according to the value of the vessel at the time of taking, " and the additional damage sustained, if any." It was *held*, that this instruction would not justify the jury in assessing damages for the breaking up of the voyage.

Where the damages assessed by a jury are excessive, a new trial may be granted in order to determine the amount of damages, without opening the whole case.

TRESPASS against the defendant, who was a deputy sheriff, for taking and carrying away a schooner called the Bashaw, alleged to be the property of the plaintiff.

The defendant pleaded the general issue, and filed a brief statement setting forth, that he attached the vessel as the property of Warren Averill, at the suit of John Stone.

At the trial, before *Morton* J., it appeared, that on March 9 1831, the plaintiff sold three fourths of the vessel to Averill, and one fourth to one Lakeman and one Butler, for the sum of $1400 ; that Averill gave his note for $1050 to the plaintiff for his part, on which he paid the sum of $300 ; that on November 19, 1833, Averill, being in embarrassed circumstances, gave a bill of sale of his share of the vessel to Josiah Caldwell, without consideration, for the purpose of preventing her from being attached by his creditors ; that on the 20th and 21st days of the same November, the property of Averill, including the vessel, was attached by the plaintiff and other creditors ; that at a meeting of the attaching creditors on the 23d of the same month, Averill and Caldwell being present, it was agreed, that conveyances should be made to the creditors severally of portions of the property attached, in part satisfaction of their demands ; that the plaintiff agreed to take the vessel, and to indorse a certain sum on Averill's note ; that the plaintiff said to Averill, that if the vessel was sold and produced more than the sum, which was to be indorsed on the note, he would also indorse thereon the difference, and that if the vessel sold for less, it should be his, the plaintiff's loss ; that a bill of sale from Caldwell to the plaintiff, was then made out, for the nominal consideration of the sum of $900 ; that Andrews, the officer who attached the vessel, went in company with the plaintiff and Averill, and the other persons present at the meeting, to the wharf where the vessel was lying ; that the officer and Boyd went on board, but that Averill did not go on board ; and that the officer discharged the keepers and made a delivery in form to the plaintiff.

The note given to the plaintiff by Averill was produced in evidence. On this note was an indorsement of the sum of $300, and also another indorsement of the sum of $600, which was dated November 25, 1833. This last indorsement was offered by the plaintiff as evidence of the payment of the consideration of the bill of sale from Caldwell to the plaintiff ; but no evidence was offered as to the time when the indorsement was made, or as to the person by whom it was made.

Butler testified, that he and Lakeman gave the plaintiff a bill

of sale of their share of the vessel in November 1833 ; that the plaintiff requested the witness to look after the vessel for him ; that afterwards, in a conversation with the plaintiff and Averill, the witness told the plaintiff, that he was going away and could not look after the vessel, but that Averill would attend to her ; and that he heard the plaintiff apply to Averill for that purpose.

It further appeared, that the vessel was removed to Averill's wharf in the spring of 1834 ; that Averill procured certain repairs to be made upon her, and told the carpenter by whom the repairs were made, that the vessel belonged to the plaintiff, and that he or the vessel would be answerable ; and that the expenses of the repairs had not been paid

The defendant offered to prove, that the plaintiff, in July 1834, commenced an action against Butler and Lakeman, on a note dated March 9, 1831, and attached the one fourth part of the vessel in question, of which they had given him a bill of sale. This evidence was rejected.

George H. Devereux testified, that in conversation with the plaintiff, soon after the writ by virtue of which the defendant attached the vessel was made, the plaintiff told him, that he had paid Averill nothing, that he had a note and other things against Averill and he took the vessel, that he thought he should get nothing else, and that he had made no indorsement on the note.

Perkins Lord, who was produced as a witness by the defendant, testified, that he was present when the bill of sale of the vessel was made to the plaintiff in November 1833 ; that the plaintiff told Averill, that he did not wish to hurt him, that he would leave the vessel there, or with him, and that if he (Averill) would pay the interest and the principal, he (the plaintiff) would give him a bill of sale of her ; and that Averill replied that he would pay for her, and would make a payment before the vessel started, meaning, as the witness supposed, before she went on a mackerel voyage in the spring.

The jury were instructed, that the conveyance to Caldwell vested in him the legal title, the equitable title being in Averill ; that this being the situation of Caldwell, it was his duty

to convey the vessel to whomsoever Averill might direct, that if the delivery to the plaintiff by the officer, was made with the knowledge and assent, and in behalf of Averill, it would be well ; that the conveyance of the vessel by Caldwell to the plaintiff was absolute and not a mortgage ; that if there was any secret trust for the benefit of Averill, it would avoid the sale ; that it was to be considered whether it was the intent to convey merely as security, and whether the parties had any motive to cover the property ; that the plaintiff had actually attached this property ; that if his debt was to a greater amount than the value of the vessel, the jury were to judge why he should do it ; that if the parties had intended to mortgage, there was no more difficulty in making a mortgage than an absolute conveyance ; that it was clear that the conveyance could not be valid as a mortgage ; that if it was the plaintiff's vessel, he might agree with the other party as he chose ; that if it was a *bonâ fide* conveyance to the plaintiff, he was to prevail ; that if the agreement took place as the witnesses had stated, precisely, it was a valid transaction ; that the principal damage was the value of the vessel ; that there was no malice on the part of the defendant in attaching the vessel ; that there was some evidence to show, that she was preparing for a voyage ; and that the jury would estimate her value at the time of the taking, and the additional damage sustained, if any.

The jury found a verdict for the plaintiff for the sum of $1075·67.

The defendant moved for a new trial, for the following reasons :

1. Because the court refused to permit the evidence offered, respecting the plaintiff's title to one quarter part of the vessel derived from Butler and Lakeman, to go to the jury, the defendant alleging and offering evidence tending to prove the same to have been made without any consideration and for a fraudulent purpose.

2. Because the court instructed the jury, that the legal title in the vessel passed to Caldwell by virtue of the bill of sale given to him by Averill, which bill of sale was admitted by Caldwell to have been given to him without any consideration

having been paid therefor, and for the purpose of covering the property from the claim of the creditors of Averill.

3. Because the court instructed the jury, that Caldwell held the vessel as trustee of Averill, and that the bill of sale given by Caldwell to the plaintiff, with the consent of Averill, vested a legal title to the vessel in the plaintiff as against the creditors of Averill.

4. Because the court instructed the jury, that an actual delivery of the vessel by Averill was not necessary, if they believed the plaintiff took possession, with the consent of Averill, under the bill of sale from Caldwell, by the delivery of the officer who had previously attached the vessel.

5. Because the court instructed the jury, that actual payment of the consideration by the plaintiff, on the purchase of the vessel, was not necessary to perfect his title as against the subsequently attaching creditors of Averill.

6. Because the court instructed the jury, that the indorsement on a note held by the plaintiff against Averill before the sale of the vessel to the plaintiff, of the consideration of the sale, subsequently to the defendant's attachment, the indorsement purporting to have been made at a time previous thereto, and being produced by him at the trial as evidence of the payment of the consideration at the time when it was dated, was not a fraudulent act against the attaching creditors of Averill, but only an improper transaction tending to throw suspicion on the other circumstances attending the sale.

7. Because the court declined, on the motion of the defendant, to instruct the jury, that the bill of sale from Caldwell to the plaintiff, connected with the agreement which was made between the plaintiff and Averill, at the time when the bill of sale was executed, constituted a mortgage of the vessel, and that to pass a valid title under such mortgage, the mortgager remaining in possession, it was necessary that the same should be recorded, as other mortgages of personal property are required to be recorded.

8. Because the court instructed the jury, that they might give the plaintiff damages, as well for the actual value of the vessel at the time when she was attached by the defendant, as

Boyd
*v.*
Brown

for any loss he might have sustained by reason of the detention of the vessel and the breaking up of her voyage.

9. Because the damages found by the jury, were excessive and unwarranted by the testimony in the case.

*Nov. 5th.*

*Shillaber* and *Proctor*, for the defendant, to the point, that the evidence offered by the defendant, as tending to show that the bill of sale from Butler and Lakeman to the plaintiff was given without any consideration and for a fraudulent purpose, was admissible, cited *Rowley* v. *Bigelow*, 12 Pick. 307 ; to the point that actual payment by the plaintiff, of the consideration, on the purchase of the vessel, was necessary to perfect his title as against the creditors of Averill, the agreement as to the indorsement not being sufficient, *Widgery* v. *Haskell*, 5 Mass. R. 144 ; to the point, that the parol evidence was admissible to prove that the conveyance of the vessel to the plaintiff by Caldwell, was a mortgage, and did in fact prove it to have been a mortgage, 1 Powell on Mortgages, (Rand's edit.) 26 *b*, note 1, and 120, note 2 ; *Champlin* v. *Butler*, 18 Johns. R. 169 ; *Parker* v. *Hall*, 2 Pick. 206 ; *Rice* v. *Rice*, 4 Pick. 349 ; *Jackson* v. *Vernon*, 1 H. Bl. 114 ; *Eaton* v. *Whiting*, 3 Pick. 484 ; and to the point, that the plaintiff was not entitled to damages, for any loss occasioned by the detention of the vessel and the breaking up of her voyage, *Rice* v. *Austin*, 17 Mass. R. 197.

*Saltonstall*, *Choate* and *Lord*, for the plaintiff, to the point, that the evidence offered to show that the sale by Butler and Lakeman to the plaintiff was fraudulent, was inadmissible, cited *Viney* v. *Barss*, 1 Esp. R. 293 ; *Balcetti* v. *Serani*, Peake's N. P. C. 142 ; *Holcomb* v. *Hewson*, 2 Campb. 391 ; *Goodwin* v. *Hubbard*, 15 Mass. R. 215 ; *Fairbanks* v. *Blackington*, 9 Pick. 96 ; to the point, that the instruction as to the delivery of the vessel to the plaintiff was correct, *Rice* v. *Austin*, 17 Mass. R. 197 ; *Chaplin* v. *Rogers*, 1 East, 192 ; *Jewett* v. *Warren*, 12 Mass. R. 300 ; *Shumway* v. *Rutter*, 8 Pick. 443 ; Brown on Sales, 390 ; to the point, that there was a sufficient consideration on the part of the plaintiff, for the conveyance of the vessel to him by Caldwell, *Webb* v. *Peele*, 7 Pick. 247 ; *Cushing* v. *Gore*, 15 Mass. R. 69 ; and to the point, that the rule of damages as laid down by the judge, was correct,

1 Tidd's Pr. 391 ; 1 Chitty's Pl. 442, 443 ; *Hume* v. *Oldacre*, 1 Stark. R. 351 ; *Rice* v. *Austin*, 17 Mass. R. 197 ; *Sampson* v. *Coy*, 15 Mass. R. 493 ; 3 Stark. on Evid. 1454 ; *Churchill* v. *Watson*, 5 Day, 140 ; *Edwards* v. *Beach*, 3 Day, 447 ; *Parkhurst* v. *Foster*, 1 Ld. Raym. 480.

Boyd
*v*
Brown.

WILDE J. delivered the opinion of the Court. This was an action of trespass against the defendant, a deputy sheriff, for taking and carrying away the plaintiff's vessel ; and the defendant justifies the taking, under a writ of attachment against Warren Averill. On the trial several questions of law were raised relating to the validity of the plaintiff's title, which have been ably argued, and the decision of the Court thereon I will now briefly state.

*Nov. 7th.*

Previous to the 9th of March, 1831, the plaintiff was the owner of the vessel in question, but on that day he sold the same to Warren Averill, and to one Lakeman and one Butler, viz. three fourths to Averill, and the remaining fourth to Lakeman and Butler.

The plaintiff then introduced evidence to show a repurchase of the vessel, and the questions arise on the defendant's objections to the plaintiff's title as thus acquired.

1. The first objection is, that the purchase from Lakeman and Butler was made without consideration, and was therefore fraudulent and void. This objection was overruled, and it is very clear that it cannot be maintained. The creditors of Averill had no legal right to question the validity of that purchase. It was valid as against the vendors, and all the world excepting their creditors and subsequent purchasers. If it was fraudulent against them, they, or persons claiming under them, could alone avoid it. This sale had no connexion with that from Averill. They were distinct transactions, and evidence of fraud in the one would have no tendency to show fraud in the other.

2. The second objection relates to the purchase of Averill's share in the vessel. It was proved, that before this purchase, Averill, being in embarrassed circumstances, had given a bill of sale of his share in the vessel to one Caldwell, without consideration, for the purpose of preventing its being attached by his creditors ; and when the plaintiff agreed to

purchase, he took a bill of sale from Caldwell, and not directly from Averill. On this evidence the court held that Caldwell had the legal title, and the jury were so instructed. To this decision and direction to the jury the counsel for the defendant except, and the exception seems plausible, but it will not bear examination.

The conveyance to Caldwell was voidable only, not absolutely void, and although the creditors of Averill had the right to avoid the conveyance, yet they had not in fact avoided it. They had attached the property it is true, but their attachments were withdrawn, it being agreed that this and other property attached should be distributed among the creditors in satisfaction of their debts. The legal title therefore still remained in Caldwell. It was voidable, it is true, but not absolutely void.

After the conveyance from Caldwell to the plaintiff, it was too late for the creditors of Averill to avoid the conveyance from him to Caldwell. For by the payment of a full consideration to Averill the plaintiff's title was confirmed, and the fraud in the original conveyance was purged. The plaintiff therefore stands on as good a footing as he would have stood on, had he purchased of Caldwell, *bonâ fide*, and without knowledge of the fraud. And besides, the facts are sufficient to show a sale directly from Averill to the plaintiff, if there be any doubt as to the validity of the conveyance from Caldwell.

3. The next exception is to the charge of the judge as to the delivery of the vessel. It was proved that the officer who attached the vessel discharged the keepers and made a delivery in form to the plaintiff, after his purchase ; and the jury were instructed, that if this delivery was made with the knowledge and assent, and in behalf of Averill, it would be well. Whether the delivery was made with the assent of Averill, and on his behalf, were questions which were properly left to the jury to decide ; and the evidence is sufficient to authorize them to find in the affirmative. And certainly the instructions to the jury in this respect were correct.

4. Nor can we perceive any thing exceptionable in the charge of the Court in respect to the evidence of payment. It was proved, that at the sale the plaintiff agreed to indorse a

certain sum on his note against Averill, but it was not then done. The jury were instructed, that if the indorsement was not made until after the defendant's attachment, the delay would not necessarily vitiate the sale ; but that it was a circumstance for the jury to consider, in connexion with the other evidence, in determining the question whether the sale was fraudulent or not. It certainly cannot be maintained that this delay was conclusive evidence of a fraudulent intent ; it was therefore properly submitted to the jury with the other evidence.

5. So the question, whether, on the evidence, the sale to the plaintiff, connected with the agreement to reconvey, amounted to a mortgage, or was an absolute sale and a conditional promise to reconvey, was properly left to the jury to determine. This depended on the intention of the parties, and that was to be ascertained by parol evidence, of which the jury were the proper judges. The circumstance that it could not be recorded as a mortgage, had a strong tendency to show that it was not intended as such by the parties.

6. As to the rule of damages, the jury were not instructed, as is supposed by the argument for the defendant, to assess damages for the detention of the vessel and the breaking up of the voyage. The instruction was, to estimate the damages according to the value of the vessel at the time of taking, "and the additional damages sustained, if any." But this general remark would not justify the jury in assessing damages for the breaking up of the voyage.

But whether the jury were misled or not by this remark, we think the damages are excessive, very far exceeding the value of the vessel, according to the weight of the evidence. But this we do not consider a sufficient reason for setting aside the verdict and granting a new trial so as to open the whole merits of the case to future litigation, which have been once fairly tried, especially as the verdict may be set aside in part, and a new trial granted with respect to the assessment of damages only, as was done in the case of *Winn* v. *Columbian Ins. Co.* 12 Pick. 288 ; and thus the only error existing may be corrected without the expense of a new trial on the merits

3./ *