DAVID POWER

*v.*

JOHN ALSTON *et al.*

1. FRAUDULENT CONVEYANCE—*evidence of fraud.* A person in failing circumstances, by written agreement, sold all his real estate below its actual value to his son-in-law, who was to assume a mortgage debt thereon, and agreed to pay the vendor $3000 cash, or in sums up to that amount, from time to time, as the vendor might demand, less certain sums of money due from the vendor to the vendee, without stating the amount of such indebtedness, the purchaser having knowledge of the vendor's indebtedness to others, and the vendor, after making conveyances, still remained in possession, and made contracts for improving the property: *Held,* that the written contract, on its face, bore evidence of fraud, and, it not appearing the vendor had remaining sufficient property to pay his debts, that a decree subjecting the property to payment of a debt of the vendor was properly rendered.

2. Where a sale is made by a failing debtor, and it appears from the transaction that it was designed the vendor should retain a secret use in the property, it must be condemned as fraudulent and void as to creditors.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Messrs. McCOY & PRATT, for the appellant.

Mr. ROBERT HERVEY, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

On and prior to January 1, 1875, James Thomson was largely indebted to John Alston & Co., for goods sold and delivered. On that day, Thomson made a contract with his son-in-law, David Power, the terms of which were reduced to writing, whereby he agreed to sell and convey to Power all the real estate he then owned, being lot 1, in block 3, in Higgins, Law & Co.'s addition to Chicago; lots 3 and 4, in block 15, in Newberry's addition to Chicago; south 40 feet of lots 6 and 7, in block 40, in School Section addition to Chicago. Four deeds, embracing the whole property, but each deed being only for a particular part, were executed by Thomson and his wife, and delivered to Power, on the 4th day of March then next ensuing, though bearing the same date as that of the contract.

John Alston & Co. brought suit against Thomson, on his indebtedness, on the 20th of July, 1875, in the Superior Court of Cook county, and recovered a judgment on the 14th of August next following, for $2914 and costs of suit. On the same day, execution was issued on this judgment and delivered to the sheriff of Cook county to execute. He returned the same, on the 12th of November next following, " no property found."

On the 19th of February, 1876, John Alston & Co. filed their bill in chancery, in the Superior Court of Cook county, against Thomson and Power, alleging therein, among other things, that the conveyances by Thomson to Power were "fraudulent and without consideration, to put it beyond the

reach of the complainants' judgment," etc. Answers were filed by Thomson and Power, under oath, and the cause was heard on bill, answers and proofs, and a decree rendered in accordance with the prayer of the bill. From this decree Power appeals, and brings the record before us for review.

Power and Thomson set up, in their answers, their contract, and allege that it was made in good faith, upon the consideration therein stated, and without any intent to hinder and delay Thomson's creditors. That contract is as follows:

"CHICAGO, *January* 1, 1875.

"For and in consideration of the sum of one dollar to me in hand paid, I hereby agree to sell and convey unto David Power, of Chicago, for the sum of $10,000, the following described property, (deeds for the same to be executed as soon hereafter as possible,) bearing this date: Lot 1, block 3, Higgins, Law & Co.'s addition to Chicago; lots 3 and 4, block 15, Newberry's addition to Chicago; south 40 feet of lots 6 and 7, block 40, School Section addition; north half of west 103 feet lot 16, block 44, School Section addition,—all situate in the city of Chicago, Cook county, Illinois.

"In payment for the same, I agree to receive the sum of $3000 cash, or in sums up to that amount, from time to time, as I may demand, less certain sums of money due said Power at this date. For the balance of the consideration ($10,000) said Power agrees to assume a mortgage for the sum of $7000 on said property, which is due and payable on September 16, 1877, drawing interest at rate of ten per cent per annum, payable quarter-yearly.

"I also agree to pay all taxes and assessments levied against said property to this date, as part consideration of this contract.

"I also agree to collect the rents of that portion of said property which may be rented; said collections made by me to be applied by said Power as part payment of the within consideration.

JAMES THOMSON."

We think this instrument bears on its face evidence to rebut the allegations of good faith, etc., in the answers. If Power owed Thomson anything, Thomson's creditors were entitled to have it, if it exceeded the statutory exemptions, in payment of their debts. But no creditor could tell whether Power owed Thomson anything on this instrument or not. How much do the sums due Power at that date, less which the balance due Thomson is to be ascertained, amount to? Do they cover the entire $3000, or only a part, and if a part, what part? And, as if to completely place it beyond the power of a creditor to reach any balance there might be, it is provided it is to be paid only from time to time as Thomson may demand. It would seem the purpose must have been to place this balance where none but Thomson could avail of it. We do not say that such is the effect of the language employed, but simply that such was evidently its design. The other evidence, moreover, shows that Power knew that Thomson was indebted when this contract was made, and that these conveyances embraced all the real estate he had. The evidence fails to show that he retained other property sufficient to pay his debts, and the reasonable inference is that he did not do so. The evidence shows that the value of the property was much greater than the amount agreed to be paid by Power, and that notwithstanding the conveyances Thomson remained in possession, making improvements, and contracting therefor in his own name, and collecting rents, just as if he were owner. It is, we concede, shown that Thomson's continued possession is claimed as that of agent, but it is extremely suspicious when the owner of to-day is but the agent of to-morrow, and yet enjoys then all that he did as owner.

Alston swears that Power told him Thomson's object in making this contract, and the conveyances pursuant thereto, was to save the property for his family, and although this is denied by Power, the circumstances corroborate Alston, and show that such must have been the fact. It is not important what further may have been intended by Thomson and Power,

if they intended Thomson should retain a secret use in the property. They may have not intended that this should hinder or delay creditors. Its legal effect, however, is to hinder and delay them, and therefore the conveyances are, under the statute, fraudulent and void as to creditors. From all the evidence, the reasonable inference is that it was designed Thomson should retain a secret use in the property, and this condemns the conveyances. If Thomson's purpose was to retain this secret use, it must have been known to Power; indeed, Alston says Power told him this was the fact.

Alston and Power were both examined orally before the court, and the chancellor hence had an opportunity to judge of their respective credibility by their appearance and bearing while testifying that is denied to us. He may have had good reason to disbelieve the evidence of Power, and to believe that of Alston.

The refusal of the court to give appellant further time to obtain witnesses on the question of the value of the property, was within the discretion of the court, and the record furnishes no evidence of its abuse.

We see no cause to disturb the decree. It is therefore affirmed.

*Decree affirmed.*