EDGAR M. WESTERVELT, RECEIVER OF THE CITIZENS NATIONAL BANK OF GRAND ISLAND, APPELLANT, V. WILLIAM A. HAGGE ET AL., APPELLEES.

FILED APRIL 10, 1901.   No. 9,334.

1. **Attachment Upon Real Estate Fraudulently Alienated Fastens Lien Notwithstanding Record Title is in Stranger to Writ.** Where an attachment is levied on real estate fraudulently alienated by the attachment debtor and grantor, for the purpose of hindering, delaying and defrauding creditors, even though the legal title of record is in another, the attachment creditor acquires thereby a lien upon the interest of the debtor in the land attached, which he may enforce by appropriate proceedings after recovery of judgment.

2. **Where Attached Premises Are Reconveyed Lien Becomes Effective.** Where, after attachment proceedings on land fraudulently alienated, the real estate is reconveyed and restored to the fraudulent grantor, the lien of the attachment becomes thereby effective and enforceable, the same as though the conveyance in the first instance had not been made.

3. **Under Facts Creditor Not Guilty of Laches.** *Held*, Under the facts as disclosed by the record, attachment creditor not guilty of laches in enforcing the lien acquired by virtue of his attachment.

4. **Attachment on Real Estate: SUBSEQUENT LIEN: NOTICE.** Where, pending litigation, after the levy of an attachment on real estate, a lien has been acquired by another on the same property, the person in whose favor the lien is created is charged with notice and takes subject to the rights of the plaintiff in the action wherein the attachment was levied and final judgment rendered.

5. ————: Service on Occupant is Compliance with Statute. Where a copy of an order of attachment is left with the actual occupant of lands attached, having possession of the premises and apparent authority over and control of the same, the act will be a compliance with the provisions of the statute, requ'r:ng that "where the property attached is real property, the officer shall leave with the occupant thereof, or, if there be no occupant, in a conspicuous place thereon, a copy of the order," although such occupant be not the owner or lessee of such premises.

6. ————: Conveyance in Fraud of Creditors: Reconveyance and Subsequent Incumbrance: Lien. Where real estate is attached by a creditor of a fraudulent grantee, to whom the legal title has been conveyed in fraud of the rights of the creditors of the fraudulent grantor, and who has no actual interests therein, and who restores and reconveys the real estate to the fraudulent grantor, who voluntarily incumbers the same for the benefit of his creditors, such attachment creditor thereby acquires no valid lien on the property as against such creditors of the grantor under their liens thus acquired.

7. Attachment Lien: Equities. An attachment lien on land, the legal title to which is in the attachment debtor, is subject to every equity which exists against the debtor at the time of the levy of the attachment, and courts of equity will limit the lien to the actual interest of the attachment debtor in such real estate.

Appeal from the district court for Hall county. Heard below before Thompson, J. *Affirmed.*

*Othman A. Abbott,* for appellant:

Under section 476 of the Code, under the title "Executions," only the legal title of the judgment debtor can be levied on. *Dworak v. More,* 25 Nebr., 735; *Connell v. Galligher,* 36 Nebr., 749.

*James H. Woolley, Fred W. Ashton, Charles G. Ryan, W. S. Pearne, W. A. Prince* and *R. G. Glanville, contra.*

Holcomb, J.

One William Hagge was the owner of certain real estate situated in Hall county, upon which different alleged liens and their priorities are involved in this controversy. At or about the time of the transactions hereinafter

narrated, Hagge became financially distressed, because of his connection with, and liability as a stockholder in, the Citizens National Bank of Grand Island, which closed its doors and suspended business about December 4, 1893. On December 6 there was placed on record in the office of the county clerk a warranty deed, conveying the real estate in controversy from Hagge and wife to one D. H. Veiths, a relative of Hagge, for an expressed consideration of $10,500. The deed bore date August 9th preceding, and was acknowledged on the 24th of the same month. A mortgage from Veiths and wife on the premises was executed at the same time for an expressed consideration of $9,500, and recorded December 26, 1893. Soon after the recording of the instrument conveying the land from Hagge to Veiths, attachment suits were instituted by the appellee Taylor and appellant city of Grand Island, and the real estate was attached at the instance of Taylor as the property of Hagge, it being alleged that he had and was about to convey his property for the purpose of defrauding his creditors, and hindering and delaying them in the collection of their debts. In the suit brought by the city the property was attached as the property of Veiths on a contract liability claimed to be due the city on a bond, on which he was an obligor, in favor of the city, given by one West as city treasurer. Each of these two suits was prosecuted to final judgment, and the property attached was ordered sold in satisfaction of the judgments so rendered. On January 26, 1894, Veiths and wife transferred the real estate to Hagge, excepting in the covenants of warranty any lien or liens thereon by virtue of attachment proceedings in favor of the city of Grand Island, and all taxes. Afterwards, through a third party or trustee, the land was conveyed to Mrs. Hagge, the wife of William Hagge. Mortgages were then executed by Mrs. Hagge and her husband, one in favor of James H. Woolley to secure certain notes evidencing an indebtedness against Hagge, and one to the appellant as receiver of the Citizens Na-

tional Bank to secure $6,000 of a judgment rendered against Hagge on his stockholders'.liability in said bank. The receiver then brought an action in equity to foreclose his lien by virtue of the mortgage securing the judgment, making all others claiming an interest in or lien on the land parties to the action, and claiming a prior lien on the premises, except as to the mortgage executed in favor of Woolley, which, it was admitted, was superior to the lien in favor of the receiver. Issues were joined, in the formation of which Taylor and the city of Grand Island set up their attachment suits and the judgments rendered therein, claiming a lien on the land by virtue thereof superior to those created by reason of the mortgages subsequently executed. On the trial the court found in favor of Taylor, awarding him a first lien; in favor of the assignees of the indebtedness secured by the Woolley mortgage, giving them a second lien; the receiver was decreed to have a third lien. The court dismissed the action as to the city of Grand Island and one other cross-petitioner, whose case is not here for review. The receiver and the city of Grand Island appeal from the decree.

In determining the respective rights of the appellants we are required to consider different and distinct propositions of law, and it is, therefore, proper to treat the appeal under two heads. The decree of the trial court, giving to the appellee Taylor on his cross-petition a first lien on the property by virtue of the attachment proceedings instituted by him December 8, 1893, and the judgment rendered thereon, is objected to on the ground, as argued, that the legal title to the property at the time the attachment was levied being in the said Veiths, and Hagge having only an equitable interest therein, attachment would not lie, and the plaintiff in the attachment suit acquired no lien on the property by reason of the levy on the land while standing in the name of Veiths, the grantee of Hagge. In *Shoemaker v. Harvey*, 43 Nebr., 75, it is held, in the second paragraph of the syllabus: "If

there is no possession of real property by an attachment defendant having an equitable interest therein, no valid levy and sale can be made upon such equitable interest, neither can it under such circumstances be subjected otherwise than by invoking the aid of a court of chancery." The opinion in the case sustains the proposition thus announced in the syllabus, and we have no disposition to modify or recede from the same, and if it be proper to apply the same principle to the facts in the case at bar, then the decree pronounced by the trial court can not stand. But is the principle applicable? In the *Harvey Case*, and all similar cases, the underlying principle is that where the interest of the attachment debtor in real estate is purely equitable, uncoupled with possession, then an attachment or execution can not be validly levied, but resort must be had to a court of equity to bring together the legal and equitable estate, and decree the property to belong to the actual owner. To illustrate: In the *Harvey Case* the legal title to the property had never been vested in the Harveys; their interest and estate, if any, in the property sought to be attached was equitable only, and could not be reached by the attachment as "lands and tenements" of the attachment debtor. In the case at bar, Hagge was the legal and equitable owner of the property, save only as his title may have been divested by the conveyance made by him to the said Veiths. By the conveyance he attempted to convey all his interest in the land, both legal and equitable. He evidently sought to put it out of the reach of his creditors, either by process out of a court of law or in an action in equity. Taylor levied his attachment on the land on the ground that Hagge had fraudulently disposed of his property with the intent to cheat, hinder, delay and defraud his creditors. By section 17 of the Statute of Frauds (Compiled Statutes, ch. 32) such a conveyance is fraudulent and void as to the creditors of the grantors. As to such creditors, the conveyance may be treated as absolutely void and a nullity, as though it had never been made and

the property remained as it actually was, the property of the debtor. The conveyance is at most only a cloud on the title of the debtor, and if required, may be re-moved in any proper proceeding brought for that purpose. The attachment laws would be ineffectual, and the provision for the attachment of property which has been fraudulently conveyed would be meaningless, if the construction contended for should prevail.

The proposition under consideration seems, however, to have been quite firmly settled by the prior decisions of this court. In *Keene v. Sallenbach*, 15 Nebr., 200 it is held: "Where an attachment is levied upon real estate belonging to the debtor, whether held in his own name or not, the attaching creditor acquires a lien upon the interest of the debtor in the land which he may enforce after he recovers judgment." Says MAXWELL, J., the author of the opinion: "But where sufficient cause is shown for an attachment, and one is issued and levied upon real estate belonging to the debtor, whether held in his own name or not, the creditor acquires a lien upon the interest of the debtor in the land, which he may enforce after the recovery of judgment. Where in such case it is necessary to set aside a conveyance alleged to be fraudulent as to creditors, an action may be commenced for that purpose against the alleged fraudulent grantee and other proper parties, and it is the duty of the court to render such decree in the premises as the testimony will justify."

In *Kimbro v. Clark*, 17 Nebr., 403, on the same subject, it is observed at page 406 by REESE, J., who wrote the opinion: "If the title to the property is held by another as a secret trust for the benefit of the debtor who is the real owner, and if such ownership is merely colorable such property will be deemed to be held for the benefit of creditors, and the conveyance, while good as between the parties, will be held void as to them. *Sturdivant v. Davis*, 9 Ired. [N. Car.], 365; Bump, Fraudulent Convey-ances, 215; *Power v. Alston*, 93 Ill., 587. And is subject to the process of attachment." To the same effect is

*Kennard v. Hollenbeck,* 17 Nebr., 362, where the facts are quite similar.

It is stated in *Gormley v. Potter,* 29 O. St., 597, 599: "The land in controversy was subject to levy on execution, and the levy upon it was properly made. The conveyance to Flynn by the judgment debtor, and by Flynn to the debtor's wife, having been made with intent to defraud creditors, was, as against the creditors, absolutely void. As respects the rights of creditors, the land was still the property of the judgment debtor, and subject to execution as fully as if the conveyance had not been made."

Says the supreme court of Illinois in the case of *McKinney v. Farmers Nat. Bank,* 104 Ill., 180, 183: "The statute says such fraudulent conveyances shall be held void as against creditors. Creditors have the right to treat such conveyances as void. The moment appellees levied their attachments specially upon these lands, as the property of Patterson, their election to treat the former conveyances as void was declared, and such attachments became a lien against the lands with the same effect as if the fraudulent conveyances by Patterson had never been made."

The following authorities also sustain the proposition as announced by the prior decisions of this court heretofore referred to: *First Nat, Bank v. Hollerin,* 31 Nebr., 558; *McVeigh v. Ritenour,* 40 Ohio St., 107; *Westerman v. Westerman,* 25 Ohio St., 500; *Sockman v. Sockman,* 18 Ohio, 362; *Scott v. Hartman,* 26 N. J. Eq., 89; *Terhune v. Hackensack Savings Bank,* 45 N. J. Eq., 344; *Pratt v. Wheeler,* 6 Gray [Mass.], 520; *Arper v. Baze,* 9 Minn., 98. These cases are all distinguished from the *Harvey Case,* and those similar, in that, in the one class, the attachment or execution debtor, being the owner of the legal and equitable estate, has sought to alienate his interest in the property in fraud of the rights of creditors, who may treat the transaction as a nullity, and enforce their rights in, and claims to, the property, notwithstanding the

fraudulent transfer; while in the other class of cases, the attachment debtor has only an equitable interest in the property, which can be reached only by resort to a court of equity, which can take hold of the legal and equitable title at the point of divergence and direct them into the one channel of actual ownership.

We reach the conclusion, therefore, that Taylor acquired a valid lien on the real estate by virtue of the levy of his attachment thereon as the property of Hagge, which might be enforced in that action or in subsequent proceedings, and that, if required, a resort might be had to a court of equity to remove the cloud on the title caused by the fraudulent conveyance to Veiths. In the case at bar proceedings for this purpose were rendered unnecessary by reason of the reconveyance of Veiths to Hagge, which again restored to and vested in him full and complete title of record to the property to the same extent as though the conveyance in the first instance had not been made.

It is suggested that the attachment creditor has slept on his rights, and ought not in equity be given a lien in priority to that of appellant under the mortgage security. The record discloses that the attachment was levied on December 8, 1893; that final judgment was not rendered until December 2, 1895; that after the levy and during the pendency of the action, the appellant obtained his judgment and mortgage security therefor. On April 4, 1896, he began an action in equity, and made Taylor a party defendant, who came in and pleaded his attachment suit as giving him a lien on and interest in the land, which he asked to have adjudicated. We do not think there was any such laches as would forfeit his prior lien, and that the equity action begun by plaintiff afforded him an opportune time to adjust by decree the priorities of liens on the premises involved in the proceedings. The appellant, having acquired its lien *pendente lite*, was charged with notice and took subject to the rights of the plaintiff in the action wherein the at-

tachment was levied and final judgment rendered. *Wright v. Smith,* 11 Nebr., 341.

An objection is urged as to the validity of the levy of the writ of attachment, because, as claimed, a copy of the order was not left with the occupant of the land attached. The return of the officer shows a copy of the order to have been left with the occupant of the premises on which the writ was levied. The evidence shows that the person occupying the premises as tenant was absent from the county, and that the person to whom a copy of the order was delivered was occupying the premises with the tenant, and had the apparent control and possession, and had the actual possession of the premises at the time of the levy. This is sufficient. The law does not require the officer to determine who may be the lessee and legal tenant of the owner. The person who is in possession and occupying the premises with apparent authority and control thereof may be served with the order, and compliance is thereby had with the provisions of the statute, viz.: "Where the property attached is real, the officer shall leave with the occupant thereof, or if there be no occupant, in a conspicuous place thereon, a copy of the order." The person upon whom the order was served at the time of the service was the actual occupant of the lands attached, and the demands and object of the statutes were met and complied with by service upon him. The objection to the manner of service of the writ is not, we think, well taken.

With respect to the city of Grand Island and its interest in the lands involved in controversy by virtue of the writ of attachment by it levied on the land as the property of the grantee, Veiths, it is argued, as it is by the appellant, the receiver, that the Taylor attachment could be levied only on an equitable interest in the property belonging to the grantor, Hagge, and, therefore, it was invalid, and no rights accrued to Taylor by reason of the proceedings taken by him in that suit. What has been said with relation to the contention of counsel for

receiver in this regard applies with equal force and pertinency to the claims of counsel for the city. We are, therefore, under the necessity of inquiring only as to the relative rights of the city as an attaching creditor of the grantee Veiths, and the mortgagees claiming as creditors of Hagge. It is argued, in a very elaborate brief by counsel for the city, that as the mortgagees of Hagge and wife, after the reconveyance by Veiths to Hagge, take their rights to and interest in the property through the fraudulent conveyance from Hagge and wife to Veiths, and, in turn, from Veiths and wife to Hagge, and that as a proposition of law, those claiming under the grantor by way of deed, mortage or other security or conveyance, either directly or remotely, are conclusively bound by the transfers and the recitals contained in the fraudulent conveyances, and are estopped from questioning, except on the ground of fraud, the validity or legal effect of the different instruments of conveyance through which title, interest, or lien is claimed. The propositions announced are supported by well considered cases, which are entitled to great weight as authority. If the premises upon which the argument is based are sound and well founded, we are of the opinion that the conclusion arrived at as stated in the proposition would be inevitable and logically follow. But do the mortgagees of Hagge claim through fraudulent conveyances, from the consequences of which they can not escape, and by the recitals of which they are bound? That Hagge's property is morally and equitably pledged to pay his debts rather than the debts of some third party is a proposition that will not be seriously controverted. In fact, it is admitted by counsel for the city; but it is contended that the proper steps have not been taken to avoid the effect of the conveyance to Veiths, and subject the property to the payment of the debts of Hagge, the fraudulent grantor. On the trial of the case the court found the conveyance was fraudulent and void as to the creditors of Hagge. This is made manifest by the decree in favor of Taylor, an

attaching creditor. The conclusion reached by the trial court is the only proper one under the evidence. The question is one of fact, properly triable by the trial court. *Sherwin v. Gaghagen*, 39 Nebr., 238; *Houck v. Heinzman*, 37 Nebr., 463; *Goldsmith v. Erickson*, 48 Nebr., 48; *Crites v. Hart*, 49 Nebr., 53. It is shown by the evidence quite conclusively that Hagge transferred the property to Veiths wholly without consideration, and for the purpose of placing it beyond the reach of creditors, and that Veiths had no interest in the land whatever, save the naked legal title by reason of the transfer, colorable only, made by Hagge, as he says, to hold for him, and to be reconveyed whenever he requested it, and to avoid it being taken in satisfaction of his liability on a bond, to which his signature was obtained, as he claims, by misrepresentation. Veiths had no real ownership in the property, made no attempt to exercise any authority as owner, and took no steps to reduce the land to actual or constructive possession under the conveyance. The conveyance being in fraud of the rights of the creditors of Hagge, it was evidently so recognized by the parties thereto, and on January 26, following, the whole transaction was repudiated, and the property restored to its rightful owner. The deed of reconveyance was grounded on no new or valid consideration; it involved no new agreement or contract based on any good consideration. It was an undoing of that which had been wrongfully done, thus placing the parties in the situation in which they were prior to the first fraudulent conveyance. The legal effect was to restore the property to the legal owner, and render unnecessary any action or proceeding to annul and vacate the fraudulent conveyance. No action in the nature of a creditor's bill would lie, and the fraudulent grantee had relieved himself of being charged as trustee of the property for the benefit of the creditors of Hagge. Such an action would have been useless and barren of results, because the grantee had done all that a court of equity could, by order or decree, require him to do. *Swift v.*

46

*Holdridge*, 10 Ohio, 230; Bump, Fraudulent Conveyances [4th ed.], sec. 500; *Dolan v. Van Demark*, 35 Kan., 304, 309.

Can an attachment against Veiths, while he held the naked legal title under such circumstances, be held superior to that of the creditors of Hagge, the actual owner, whether a lien on the property was acquired through the voluntary act of Hagge, or by decree or process of court in litigation brought for the purpose of enforcing the rights of creditors and establishing a lien thereon? What the rights of Hagge are, or those claiming under him as subsequent creditors, grantees, or otherwise than as creditors at the time of the fraudulent alienation, it is unnecessary here to discuss or determine. In *Dolan v. Van Demark, supra*, it is said by Valentine, J.: "While generally a fraudulent vendee cannot, as against the creditors of the fraudulent vendor, sell, assign or transfer the property to a third person who has notice of the fraud, nor transfer or assign the same to even a person who has no such notice, where such transfer or assignment is merely to pay a pre-existing debt of the fraudulent vendee, yet such fraudulent vendee may make a valid sale of the property to a *bona fide* purchaser without notice of the fraud, or may, with the consent of the fraudulent vendor, and probably without his consent, make a valid transfer or assignment of such property to a creditor of the fraudulent vendor either in payment or partial payment of a *bona fide* debt of the fraudulent vendor, or as security for such debt, and whether such creditor has notice or not of the prior fraudulent sale. (*Butler v. White*, 25 Minn., 432; *Boyd v. Brown*, 34 Mass., 453, *Murphy v. Moore*, 23 Hun [N. Y.], 94; *Stark v. Ward*, 3 Pa. St., 328; *Webb v. Brown*, 3 Ohio St., 246; Bump, Fraudulent Conveyances [3d ed.], 499, 500.) The fraudulent vendee may lawfully dispose of the property in any manner in which the fraudulent vendor himself might have disposed of the property if the fraudulent sale had not occurred." It follows, then, that if the prop-

erty may lawfully be disposed of by the fraudulent grantee in satisfaction of the claims of the creditors of the fraudulent grantor, it may be reconveyed to the fraudulent grantor, and by him disposed of in any lawful manner for the same purpose.

The attachment lien of the city as a creditor of Veiths, the holder of the naked legal title, like the lien of a judgment against him, can only attach to his actual interest as the holder of the legal title as against the creditors of Hagge, and this interest, as we have seen, is nothing, the transfer being colorable only. In *Roberts v. Robinson*, 49 Nebr., 717, 721, says this court, in speaking of the lien of a judgment, and where the principle involved is applicable to the case at bar: "By section 477 of the Code of Civil Procedure a judgment is made a lien upon the land of the judgment debtor; that is, the land owned by him. True enough, if the record shows the legal title to land to be in the debtor, the judgment is an apparent lien upon the land, but the fact that the record shows the legal title to land to be in a debtor is not conclusive evidence that the debtor actually owns the real estate. The rule is that where the legal title to real estate is in the name of the judgment debtor, nevertheless the lien of the judgment against him attaches only to the actual interest which he has in the real estate," citing *Uhl v. May*, 5 Nebr., 157; *Metz v. State Bank of Brownville*, 7 Nebr., 165; *Galway v. Malchow*, 7 Nebr., 285; *Dorsey v. Hall*, 7 Nebr., 460; *Mansfield v. Gregory*, 8 Nebr., 432; *Berkley v. Lamb*, 8 Nebr., 392; *Harral v. Gray*, 10 Nebr., 186; *Dewey v. Walton*, 31 Nebr., 819; *Mundt v. Hagedorn*, 49 Nebr., 409. In *Galway v. Malchow*, 7 Nebr., 285, 290, says LAKE, J.: "It is well settled that a judgment lien on the land of the debtor is subject to every equity which existed against the debtor at the rendition of the judgment; and courts of equity will always limit the lien to the actual interest of the judgment debtor;" citing Freeman, Judgments, sec. 357; *Swarts v. Stees*, 2 Kan., 236. See, also, *Lessee of Smith v. McCann*, 24 How. [U. S.], 398. We are of the

opinion, therefore, that the city in this action can not invoke the principle sought to be applied as against the creditors of Hagge claiming under the liens sought to be estblished by them on the property in controversy, and that the attachment on the real estate as the property of Veiths was unavailing to create a lien as against such creditors, because the fraudulent grantee had no actual or substantial interest in the property, to which, at the time, he held the legal title of record. The equities are clearly in favor of the creditors of the fraudulent grantor.

The decree of the district court should, in all respects, be

AFFIRMED.